UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM WELLS, *et al.*,

      Plaintiffs,

                                Case No. 2:11-CV-00217
    v.                           JUDGE EDMUND A. SARGUS, JR.
                                Magistrate Judge Mark R. Abel

BRANDON RHODES, *et al.*,

      Defendants.

## OPINION AND ORDER

Plaintiffs, William Wells, Priscilla Wells, Jalisa Gibson, Shanay Gibson, J.W., and

J.D.W. (collectively "Plaintiffs"), bring this action against Defendants, including Defendant

Brandon Rhodes ("Rhodes"), alleging violations of 42 U.S.C. § 1982, 42 U.S.C. § 1985, 42

U.S.C. § 3617 of the Fair Housing Act ("FHA"), and Ohio Revised Code § 2307.70.  This matter

is before the Court for consideration of Rhodes' Motion for Summary Judgment as to all of

Plaintiffs' claims.  (ECF No. 94.)  At this time, the Court will also consider Plaintiffs' Motion for

Partial Summary Judgment on the Issue of Liability against Rhodes.[1]  (ECF No. 96.)  For the

reasons that follow, Plaintiffs' Motion is **GRANTED** and Rhodes' Motion is **DENIED**.

### I. BACKGROUND

A.    **Relevant Facts**

During March 2011, Plaintiffs William Wells and Priscilla Wells lived in Marengo, Ohio

with their four children: Plaintiffs Jalisa Gibson, Shanay Gibson, J.W., and J.D.W.  (*See* W.

---

[1] Plaintiffs also move for summary judgment, as to liability, against Defendant D.G. Nevertheless, the Court has already granted default judgment against D.G. and denied D.G. relief from that judgment.  (*See* ECF No. 61, 99.)

Wells Dep. 7, ECF No. 92.) Plaintiffs are African Americans. Marengo is a rural area and the record indicates that few African Americans live there. (*See, e.g.*, Am. Compl. ¶ 2; Rhodes Dep. 37, ECF No. 93.) In March 2011, Shanay Gibson, J.W., and J.D.W. were each attending Highland High School. (*See, e.g.*, S. Gibson Dep. 9, ECF No. 91.) Defendants Rhodes and D.G. also lived in Marengo during March 2011. (Rhodes Dep. 5, 7.) Rhodes graduated from Highland High School in 2009. (*Id.* at 5–6.) D.G. was still attending Highland High School during the time in question. (*See* D.G. Dep. 10, ECF No. 95.) Both Rhodes and D.G. are white.

The facts surrounding the underlying March 2011 incident are largely undisputed. During the evening of March 2, 2011, and into the early morning of March 3, 2011, Rhodes and D.G. were drinking at D.G.'s home. (*See* Rhodes Dep. 15, 43.) According to Rhodes, he and D.G., together with D.G.'s cousin, consumed approximately a thirty-pack of beer between the three of them. (*Id.*) Rhodes stated that while they were drinking D.G.—after discussing a relationship between Rhodes' sister and J.W.—constructed a cross out of wood. (*See* Rhodes Dep. 16–19, 22.) D.G. wrote "KKK will make you pay" and "Nigger" with a permanent marker on the cross. (D.G. Dep. 47.) During his deposition, Rhodes estimated that the cross was five feet tall and four feet wide. (Rhodes Dep. 23.)

Rhodes and D.G. loaded the cross into Rhodes' truck. (*Id.* at 25.) D.G. then grabbed a can of gasoline and put it into the truck. (D.G. Dep. 54.) Rhodes drove—accompanied by D.G.—to Plaintiffs' residence, which he estimated was three to four miles from D.G.'s house. (Rhodes Dep. 25–26.) According to D.G., they traveled a longer route to avoid main roads. (D.G. Dep. 58.) Rhodes parked between 50 to 100 yards from Plaintiffs' house. (Rhodes Dep. 27.) D.G. and Rhode carried the cross and laid it on Plaintiffs' front lawn. (*Id.* at 26–27.) They

2

then poured gasoline on the cross and D.G. lit the cross on fire with a lighter.[2] (*Id.* at 27; D.G.
Dep. 63.) Rhodes and D.G. then ran from the scene. (Rhodes Dep. 28.)

Rhodes denies that D.G. and he had any specific purpose in burning the cross, stating that
they were "being stupid" and that "[i]t just happened." (Rhodes Dep. 15, 18.) Nevertheless, both
Rhodes and D.G. testified to having a general understanding of the Ku Klux Klan; the Ku Klux
Klan's hatred for African Americans; and the threatening, or hateful, message typically
associated with a burning cross. (*See* Rhodes Dep. 10–12, 33–38; D.G. Dep. 18–20.) Moreover,
Rhodes was aware that Plaintiffs were an African American family and that the messages D.G.
wrote on the cross indicated hatred against African Americans. (*See* Rhodes Dep. 36–37.)
Likewise, D.G. admitted that he would not have written the messages on the cross if Shanay
Gibson had not been African American. (D.G. Dep. 93.)

In November 2012, Rhodes signed a plea agreement to criminal charges stemming from
his conduct in March 2011. The plea agreement stated "that the purpose of burning the cross at
the residence was to intimidate an African-American juvenile who lived at the residence and
interfere with the juvenile's housing rights." (Plea Agreement ¶ 3, ECF No. 102-1.)

Although the facts of the underlying event are largely undisputed, the parties dispute
what, if any, injury Plaintiffs suffered as a result of Defendants' actions. The record evidence
suggests that William Wells, Priscilla Wells, J.W., and J.D.W. did not suffer direct physical

---

[2] As the parties' briefing implies, there is some disagreement regarding the extent of the
fire. According to Rhodes, the fire resulted in flames approximately a foot, or a foot and one
half, off the ground. (Rhodes Dep. 28.) D.G., on the other hand, stated that the cross went up in
large flames about six feet off the ground. (D.G. Dep. 64.) The extent of the fire is not a
material issue.

injury and did not seek medical treatment as a result of the cross burning.[3]  (*See, e.g.*, W. Wells Dep. 83; P. Wells 66, ECF No. 90; J.D.W. Dep. 34–35, ECF No. 88; J.W. Dep. 61–62, ECF No. 89.)  Fortunately, there was no damage to Plaintiffs rental home as a result of the cross burning. (W. Well Dep. 93.)

Plaintiffs, however, have also testified regarding the distress they have suffered as a result of the incident.   For example, during their deposition testimony, Plaintiffs averred to experiencing fear and anxiety as a result of the cross burning.  (*See, e.g.*, W. Wells Dep. 56, 60–61; P. Wells Dep. 69; J.D.W. Dep. 26. 29; J.W. Dep. 39, 45, 48, 55; J. Gibson Dep. 48, 84–85, ECF No. 87; S. Gibson Dep. 52–53, 68, ECF No. 91.)  Certain Plaintiffs, and most prominently Shanay Gibson, reported trouble sleeping after the incident.  (*See, e.g.*, S. Gibson Dep. 54, 99; J.D.W. Dep. 34.)  Additionally, Plaintiffs stated that they have considered moving because of the cross burning.  (*See, e.g.*, W. Wells Dep. 61–62; J.D.W. Dep. 32; S. Gibson Dep. 65.)

On August 22, 2011, the Court held a default judgment hearing regarding damages at which time Plaintiffs testified regarding how the cross burning has impacted them.  (*See generally* Hearing Tr., ECF No. 80.)  In addition to testifying to the fear and anxiety that the incident caused, Plaintiffs stated that the cross burning has changed their family's dynamic.  (*See, e.g.*, *id.* at 17, 24, 30–31, 51, 56–57.)  For example, Jalisa Gibson testified that, since the incident, her family tends to become frustrated with one another.  (*Id.* at 17.)  Shanay Gibson stated that since the cross burning her family has basically become "shut up in the house . . . ."

---

[3]  Defendants further emphasize that, although Jalisa and Shanay Gibson testified to experiencing medical symptoms, such as headaches, as a result of the cross burning incident, Plaintiffs failed to provide supporting medical evidence. (Def.'s Mot. Summ. J. 4, ECF No. 94.)

4

(*Id.* at 24.)  Furthermore, Ms. Wells indicated that the cross burning took the comfort of the family's home away from them.  (*Id.* at 40.)

## B.     Procedural History

Plaintiffs filed this action against Defendants Rhodes, D.G., Larry Matthew Gandee, and Alisa Dawn Gandee on March 11, 2011.  Rhodes answered Plaintiffs' Amended Complaint in April 2011.  In August 2011, the Court held a hearing concerning default judgment as to the remaining Defendants.  On December 7, 2011, the Court granted default judgment against Defendants D.G., Larry Matthew Gandee, and Alisa Dawn Gandee for compensatory damages, court costs and expenses in maintaining the action, and reasonable attorney's fees.  (ECF No. 61.)  Following a subsequent motion, the Court denied relief from this judgment.

Rhodes now moves for summary judgment as to all of Plaintiff's claims.  Plaintiffs, in turn, move for summary judgment on their federal claims as to the issue of liability.[4]  This matter is now ripe for review.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[4] As Rhodes notes, within Plaintiffs' Motion for Summary Judgment, Plaintiffs fail to develop any argument as to—or specifically identify—their Ohio statutory claim under Ohio Rev. Code § 2307.70.  Accordingly, the Court will presume that Plaintiffs are moving only as to their federal claims.

5

(1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251–52.

### III.  ANALYSIS

As detailed above, Plaintiffs brings this action pursuant to  42 U.S.C. § 1982, 42 U.S.C. § 1985, 42 U.S.C. § 3617 of the Fair Housing Act ("FHA"), and Ohio Revised Code § 2307.70. The Court will consider each claim independently.[5]

---

[5] Within briefing, the parties generally conflate their analysis of Plaintiffs § 1982 and § 1985 claims. This is because, as explained further below, Plaintiffs rely on § 1982 to establish the federal right required for their § 1985 action. Nevertheless, Plaintiffs Amended Complaint and Motion for Summary Judgment also indicate that they bring claims directly under § 1982. (*See* Am. Compl. § 14; Pls.' Mot. Summ. J. 11, ECF No. 96.)

6

A.    **42 U.S.C. § 1982**

Plaintiffs first maintain that Defendants actions violated 42 U.S.C. § 1982.  Section 1982 specifically provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.  Section 1982 gives rise to a private cause of action based on private racial discrimination relating to housing.  *See, e.g.*, *Campbell v. Robb*, 162 F. App'x 460, 474–75 (6th Cir. 2006) (outlining general requirements for a claim under § 1982); *United States v. Brown*, 49 F.3d 1162, 1166 (6th Cir. 1995) ("Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment, specifically to prohibit all racial discrimination, private and public, in the sale and rental of property.") (internal quotations omitted).  Moreover, the United States Court of Appeals for the Sixth Circuit has concluded that the right to "hold" property must be construed given "the broad construction courts have traditionally given Section 1982" and includes the right of a non-owner to use property in which they have an interest.  *Brown*, 49 F.3d at 1166–67.

Outside of the context of discrimination in the actual buying and renting of property, there is relatively limited case law regarding the requirements for a § 1982 claims.  *See Bryant v. Polston*, No. IP 00–1064, 2000 WL 1670938, at *5 (S.D. Ind. Nov. 2, 2000) ("Few reported cases discuss the applicability of Section 1982 to harassing and intimidating conduct by neighbors . . . .").  Cases to address § 1982, within similar contexts, generally indicate that the statute applies to acts of intimidation that are directed at a plaintiff's property and racially motivated.  *See, e.g.*, *James v. Vill. of Willowbrook*, 2012 WL 3017889, at *12 (N.D. Ill. July 19,

2012) (holding that "allegations of harassment of a homeowner with the intent to deprive him of the right to use his property because of race are sufficient to state a claim under § 1982"); *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 850 (N.D. Ill. 2003) (allegations that neighbor detonated a Flash Simulator and yelled racial epithets at homeowner stated a claim under § 1982; *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1232 n.30 (D. Kan. 2001) (indicating that § 1982 applies to "claims for relief from discrimination in holding or conveying property and such actions as cross-burning and fire-bombing"); *Egan v. Schmock*, 93 F. Supp. 2d 1090, 1093 (N.D. Cal. 2000) ("[A]llegations of violent or intimidating acts motivated by a discriminatory animus are sufficient to state a claim for deprivation of the right to 'hold' real property as guaranteed under § 1982."); *Byrd v. Brandeburg*, 922 F. Supp. 60, 64–65 (N.D. Ohio 1996) (granting summary judgment on a plaintiff's § 1982 claim where a defendant threw a Molotov cocktail at the plaintiff's house); *Cotton v. Duncan*, No. 93 C 3875, 1993 WL 473622, at *4 (N.D. Ill. Nov. 15, 1993) ("Attempting to erect and ignite a cross that reads 'KKK Rules' on an African–American family's lawn is precisely the type of conduct section 1982 is designed to remedy.").

Finally, within the similar context of 42 U.S.C. § 1981, the Sixth Circuit has provided that a plaintiff must establish that "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)."[6] *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). In

---

[6] Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini*, 440 F.3d at 358. The Court applies the same legal framework to § 1981 and § 1982 claims. *Lindsay v. Yates*, 578 F.3d 407, 414 (6th

*Whisby-Myers*, the Northern District of Illinois applied a nearly identical standard to § 1982, 293

F. Supp. 2d at 850 ("To state a claim under § 1982, plaintiffs must allege that the defendant had a

racial animus, intended to discriminate against the plaintiff, and deprived the plaintiff of

protected rights because of the plaintiff's race.").

In this case, the Court finds that Plaintiffs are entitled to summary judgment as to their

§ 1982 claims against Rhodes. As a preliminary matter, it is undisputed that Rhodes acted in

concert with D.G. to burn a cross on Plaintiffs' front lawn. It is also undisputed that Plaintiffs, as

African Americans, belong to an identifiable class that has been subject to discrimination based

on race. Both Rhodes and D.G. were aware that Plaintiff's were an African American family.

Moreover, based on the record evidence, a reasonable jury could only conclude that Rhodes and

D.G. intended to discriminate against Plaintiffs based on race. In addition to the natural message

associated with a burning cross, the language D.G. wrote on the cross make the discriminatory

nature of Defendants' actions clear. As detailed above, Rhodes had a general awareness of the

Ku Klux Klan and also understood that the words D.G. wrote on the cross expressed hatred

towards African Americans. Finally, Defendants' discriminatory conduct infringed on Plaintiffs'

rights under § 1982 to hold and use their property. As the case law detailed above indicates,

intimidating and threatening acts—such as being subject to a burning cross on ones lawn—deny

a person the equal right to hold property as enjoyed by other citizens. This is the type of conduct

§ 1982 is meant to address.

Rhodes' denial of specific intent does not saves him from summary judgment under the

circumstances of this case. As detailed above, Rhodes testified during his deposition that he did

Cir. 2009).

9

not have any specific intention with regards to his actions because he "wasn't thinking" and he was "being stupid . . . ." (Rhodes Dep. 15, 23.) Although the Court does not contest the stupidity of Rhodes' actions, the evidence still does not establish a triable issue of fact surrounding Rhodes' intent for the purposes of § 1982.[7] Once again, based on the circumstances of this case it is clear that Rhodes intended to discriminate against Plaintiffs based on their race. Moreover, while Rhodes might not have specifically intended to drive Plaintiffs from their homes, he certainly intended—through his actions—to violate their property.[8] Rhodes purposefully directed his actions at Plaintiffs' property. After all, Rhodes drove the cross to Plaintiffs home, helped to place the cross on Plaintiffs' front lawn, and then participated in lighting the cross on fire. The clear and natural consequences of such actions was to infringe on Plaintiffs' enjoyment of their property. *Cf. Carter-Jones Lumber Co. v. Dixie Dist. Co.*, 166 F.3d 840, 845 (6th Cir. 1999) (providing that an actor is generally presumed to intend the natural consequences of his actions). Considering the totality of the circumstances in this case, Defendant Rhodes' deposition testimony is insufficient to raise a genuine factual dispute.

     Finally, to the extent Rhodes maintains that Plaintiffs have not shown sufficient injury to be entitled to judgment on a § 1982 claim, the Court disagrees. Even assuming Plaintiff is

---

[7] The requirements of § 1982, as described above, suggest that Plaintiffs need only establish that Rhodes intended to discriminate against them and that the discriminatory conduct ultimately abridged Plaintiffs' rights. *See Armini*, 440 F.3d at 358. Nevertheless, even assuming Rhodes must also have intended to infringe on Plaintiffs' property rights, Rhodes' actions in this case provide clear indication of such intent.

[8] The Court finds this intention to be clear even omitting the explicit statement within Rhodes' plea agreement stating "that the purpose of burning the cross at the residence was to intimidate an African-American juvenile who lived at the residence and interfere with the juvenile's housing rights." (Plea Agreement ¶ 3, ECF No. 102-1.)

required to show a compensable injury—in addition to the denial of the right embedded within

§ 1982—Plaintiffs have met such a requirement.  Although there is a genuine issue of dispute

regarding the quantity of damages, Plaintiffs have sufficiently established that they have suffered

at least some level of damages from emotional distress as a result of the cross burning.[9]  Under

federal law, the Court will not presume emotional distress and a plaintiff must provide competent

evidence of such damages.  *Fischer v. United Parcel Serv., Inc.*, 390 F. App'x 465, 472 (6th Cir.

2010).  At the same time, however, medical evidence is not required to prove such damages.  *Id.*

Moreover, "[a] plaintiff's own testimony, along with the circumstances of a particular case, can

suffice to sustain the plaintiff's burden in this regard."  *Turic v. Holland Hospitality, Inc.*, 85

F.3d 1211, 1215 (6th Cir. 1996).  Although admittedly difficult to quantify, considering

Plaintiffs' testimony regarding their fear, anxiety, and change in family interaction—combined

with the general circumstance of this case—a reasonable jury could only conclude that Plaintiffs

suffered at least some amount of emotional distress as a result of the cross burning.[10]  The fact

---

[9] Notably, outside of strained readings of Plaintiffs' deposition testimony, Rhodes does not produce any convincing evidence to suggest that Plaintiffs have not suffered significant fear and anxiety as a result of the cross burning.  Rather, Rhodes relies on the contention that Plaintiffs have not produced sufficient evidence.

[10] Rhodes maintains that the Court must disregard Plaintiffs' testimony from the default judgment hearing as contradictory to their earlier deposition testimony.  The Court recognizes that parties are generally barred from submitting evidence that "directly contradicts" prior testimony for the purposes of summary judgment.  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006).  A party may, however, supplement previous testimony in order to fill in the gaps of previous testimony.  *Id.*  In this case, Plaintiffs' hearing testimony does not directly conflict with their deposition testimony.  Plaintiffs' deposition testimony reflects that they had difficulty quantifying the damages they are seeking in this lawsuit.  (*See, e.g.*, W. Wells Dep. 100–01; P. Wells 95; J.D.W. Dep. 38; J.W. Dep. 65.)  At the same time, however, both Plaintiffs' deposition and hearing testimony indicate that they suffered from emotional injury, in the form of fear and anxiety, as a result of the cross burning.  Accordingly, the Court finds no reason to omit Plaintiffs' deposition testimony from its consideration.

11

that Plaintiffs had difficulty quantifying such damages during their deposition testimony is not enough to establish a triable issue of fact as to liability. Moreover, the evidence, and common sense, indicates that Plaintiffs' reports of fear and anxiety are causally linked to the cross burning.

**B.      42 U.S.C. § 1985(3)**

Plaintiffs also contend that Defendants' actions constitute a civil conspiracy pursuant to 42 U.S.C. § 1985(3). Plaintiffs contend that Defendants conspired to deprive them of the right to equal protection of the laws. They specifically invoke the property rights that § 1982 protects. Rhodes asserts that he is entitled to summary judgment because he had no intention to deprive Plaintiffs of their property rights. Additionally, Rhodes contends that Plaintiffs have failed to submit evidence of actual injury.

Section 1985(3) states as follows:

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

12

42 U.S.C. § 1985(3). The Sixth Circuit has outlined the elements of a § 1985(3) claim as follows:

> To prevail on a § 1985(3) claim, one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Importantly, although § 1985(3) provides a cause of action based on the deprivation of federal rights it "does not grant or create a substantive right" in and of itself. *Bowden v. City of Franklin, Kentucky*, 13 F. App'x 266, 272 (6th Cir. 2001).

Within the context of a conspiracy claim against a private party, a claimant must satisfy two prongs to demonstrate the purpose element of § 1985(3). Specifically, to prove a private conspiracy, "a plaintiff is required to show: '(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action, and (2) *that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment.*'" *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 435 (6th Cir. 2006) (emphasis added) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)).

The Supreme Court has recognized that there are few applicable rights for the purpose of private conspiracies under § 1985(3). *Bray*, 506 U.S. at 278. Thus far, the Supreme Court has only expressly recognized the Thirteenth Amendment right to be free from involuntary servitude and the Thirteenth Amendment right to interstate travel. *Id.* The Supreme Court also held, prior

to *Bray*, "that § 1985(3) may not be invoked to redress violations of Title VII." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 381 (1979). The *Novotny* Court reasoned that to allow a § 1985(3) claim based on Title VII would damage the comprehensive process Congress intended in enacting Title VII. *See id.* at 375–78. In concurrences, Justices Powell and Stevens both maintained that § 1985(3) only applies to constitutional rights. *Id.* at 379–85. Justice Stevens specifically reasoned that "[t]he import of the language, however, as well as the relevant legislative history, suggests that the Congress which enacted both provisions was concerned with providing federal remedies for deprivations of rights protected by the Constitution and, in particular, the newly ratified Fourteenth Amendment." *Id.* at 382–83. Finally, the Supreme Court has rejected § 1985(3) private conspiracy claims based on private infringement of First Amendment Rights. *Bray*, 506 U.S. at 278 (citing *United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983)).

In this case, Plaintiffs rely on their property rights under § 1982 to establish their § 1985(3) claims. Whether § 1985(3) allows for a private conspiracy claim based on rights embedded within § 1982, and similarly § 1981, is an unsettled question of law.[11] On the one hand, because § 1981 and § 1982 are enabling statutes of the Thirteenth Amendment, the rights that these statutes protect are analogous to the rights to interstate travel and to be free from involuntary servitude. *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 778–79 (D. Md.

---

[11] Both § 1981 and § 1982 "were originally enacted as part of the Civil Rights Act of 1866 and were designed with the same purpose in mind: to uproot the institution of slavery . . . ." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 576 (2000) (internal quotations omitted); *see also Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 779 (D. Md. 2010) ("[T]he historic interrelationship of §§ 1981 and 1982 have led courts consistently to construe these statutes in tandem . . . .") (internal quotations omitted).

14

2010). At the same time, however, Supreme Court precedent suggests that there are few private conspiracy rights under § 1985(3) and, as detailed above, there is some reason to think that private conspiracies may be limited to those involving constitutional rights.[12] *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 806 (3rd Cir. 2001) (concluding that authority supports limiting "§ 1985(3) to questions of interstate travel and involuntary servitude and does not suggest that §§ 1981 or 1982 claims in general may form the basis of a § 1985(3) action").

Prior to *Bray*, this Court held that § 1985(3) allows for a cause of action based on § 1981. *Hudson v. Teamsters Local Union No. 957*, 536 F. Supp. 1138, 1147 (S.D. Ohio 1982). The Court reasoned that, unlike Title VII, § 1981 "is not derived from a statutory scheme whose policies would be frustrated by the relitigation under another remedial statute." *Id.* Other federal courts to more recently consider this issue have reached mixed results. *Compare, e.g., Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("[B]ecause conspiracies to violate rights protected by Title VII cannot form the basis of § 1985(3) suits, . . . and because the Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3), we hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim."); *Brown*, 250 F.3d at 805–06 (concluding in dicta that §1981 and § 1982 cannot form the basis for a § 1985(3) claim); *with, e.g., Antonio*, 701 F. Supp. 2d at 779 ("'The right conferred by § 1981 to be free from private interference in the making and enforcement of contracts arguably is precisely the sort of federal right which would be among the 'few' giving rise to a remedy under § 1985(3).'") (quoting

---

[12] Of course, the actual holding of *Novotny* did not go as far as to conclude that § 1985(3) was limited to constitutional rights. *See generally*, 442 U.S. 366.

*Spectronics Corp. v. TCI/TKR, Inc.*, 17 F. Supp. 2d 669, 671–672 (W.D. Ky. 1998)); *Bryant*, 2000 WL 1670938, at *7 ("Section 1982 provides a sufficient predicate for a Section 1985(3) claim.").

The Court concludes that § 1982 provides an adequate basis for a private conspiracy claim under § 1985(3).[13] Once again, § 1982 protects citizens against private infringements on their property rights. Section 1982 also shares a close relationship with the Thirteenth Amendment, which the Supreme Court has recognized as a source of rights for § 1985(3). Moreover, neither the language of § 1985(3), nor current Supreme Court precedent, provides that the federal right in question must come directly from the Constitution. Finally, this Court's prior § 1981 decision in *Hudson* is persuasive. Although *Hudson* was decided in 1982, its analysis does not contradict the conclusions of *Bray*.

In this case, for the same basic reasons as Plaintiffs' § 1982 claim, the Court finds that Plaintiffs are entitled to summary judgment pursuant to § 1985(3). Given the circumstances of this case, a reasonable jury could only conclude that discriminatory animus motivated Rhodes' actions. Moreover, Rhodes aimed his actions at interfering with Plaintiffs' use of their property. *See Bray*, 506 U.S. at 763 ("[T]he 'intent to deprive of a right' requirement demands that the defendant . . . must act at least in part for the very purpose of producing it."). Once again, Rhodes and D.G. directed their actions at Plaintiffs' property, bringing a cross to Plaintiffs' front lawn and setting the cross on fire. From these actions it is clear that at least part of their purpose

---

[13] The Court recognizes that this is a close question. Moreover, in this case, Plaintiffs' § 1985(3) claims are largely duplicative of their § 1982 claims. Even assuming § 1985(3) is not an appropriate vehicle for Plaintiffs' action, for the reasons described above, Plaintiffs are entitled to summary judgment pursuant to § 1982.

16

was to disturb Plaintiffs' right to use their property. Finally, Plaintiffs have made a sufficient showing of injury to be entitled to summary judgment. In addition to demonstrating deprivation of their § 1982 rights,[14] Plaintiffs have established that they suffered at least some amount of emotional distress as a result of Defendants' actions.

## C. Fair Housing Act

Both parties also seek summary judgment as to Plaintiffs' claims under the FHA. The parties specifically dispute whether Rhodes' conduct interfered with Plaintiffs' property rights within the meaning of 42 U.S.C. § 3617.

The FHA provides in relevant part:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Relatedly, § 3604 states in part "it shall be unlawful (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." *Id.* § 3604(a).

The Sixth Circuit has set forth the following elements for a § 3617 claim:

> To state a claim under § 3617, the plaintiff in this case must establish (1) that he exercised or enjoyed a right guaranteed by §§ 3603-3606; (2) that the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection between his exercise or enjoyment of a right and the defendant's conduct.

---

[14] As detailed above, § 1985(3) claim allows a plaintiff to demonstrate injury by showing that he or she was "deprived of any right or privilege of a citizen of the United States." *Radvansky*, 395 F.3d at 314.

17

*Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 779 (6th Cir. 2004). Moreover, "a plaintiff is required to demonstrate 'discriminatory animus' to prevail on an interference claim under the Act." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012). The Sixth Circuit endorses a broad reading of § 3617, finding that it "is not limited to those who used some sort of 'potent force or duress,' but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994). Consequently, "[u]nder this standard, the language 'interfere with' encompasses such overt acts as racially-motivated firebombings, . . . sending threatening notes, . . . and less obvious, but equally illegal, practices such as exclusionary zoning . . . [and] deflating appraisals because of discriminatory animus." *Id.* (internal citations omitted). Finally, the Sixth Circuit has suggested that FHA discrimination claims apply similar, if not the same, standards to § 1982 claims. *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).

As with § 1982, there is limited FHA case law addressing threatening or intimidating acts taken against a person's property after acquisition.[15] Federal courts to consider such issues,

---

[15] Although the parties do not directly raise the issue, there is some disagreement over the extent to which the FHA applies to post-acquisition acts. *Compare*, *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 713–15 (holding that the FHA applies to post-acquisition discrimination); *with*, *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 328–29 (7th Cir. 2004) (concluding that § 3604 generally concerns the acquiring of property, rather than harassment after the acquiring of property). It appears, however, that federal courts have generally found that § 3617 applies to post-acquisition interference with rights. *See, e.g.*, *Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009) (holding that § 3617 applies to "a broader range of post-acquisition conduct" than § 3604); *Hidden Village, LLC v. City of Lakewood, Ohio*, 867 F. Supp. 2d 920, 940 (N.D. Ohio 2012) (holding that § 3617 covers post-acquisition discrimination even if the discrimination does not make the property unavailable). Additionally, the Sixth Circuit has implied that post-acquisition conduct is actionable under § 3617. *See Babin*, 18 F.3d at 347 (positively citing *Stirgus v.*

however, have generally held that racially-motivated intimidating acts directed at a person's property are actionable under the FHA. *See, e.g.*, *Chicago Title & Land Trust Co. v. Rabin*, No. 11–cv–425, 2012 WL 266387, at *3 (N.D. Ill. Jan. 30, 2012) (collecting case law illustrating that § 3617 applies to threatening or intimidating discriminatory conduct such as cross-burning and firebombing); *Brandeburg*, 922 F. Supp. at 64 (granting summary judgment on a plaintiff's § 3617 and § 3604(a) claims where a defendant threw a Molotov cocktail at the plaintiff's house); *Johnson v. Smith*, 810 F. Supp. 235, 238–39 (N.D. Ill. 1992) (holding, in a case involving cross burning on a families lawn, that the plaintiffs stated a claim under § 3617). The Court also recognizes, however, authority stating that the FHA was not designed "to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case." *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004).

In light of the evidence in this case, the Court holds—once again applying similar reasoning as with Plaintiffs' § 1982 and § 1985 claims—that Plaintiffs are entitled to summary judgment.[16] Pursuant to § 3604, Plaintiffs have the right to rent property, and not otherwise be denied their property, free from racial discrimination. *Cf. Babin*, 18 F.3d at 344 ("Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class."). Given the circumstances in this case, and for the reasons discussed above, there is no question that Rhodes had the requisite discriminatory

---

*Benoit*, 720 F. Supp. 119 (N.D. Ill.1989)—a case involving post-aquisition conduct—for the notion that firebombing may constitute interference under § 3617.

[16] With regard to injury under the FHA, the Sixth Circuit has held that when plaintiffs are able to demonstrate a violation of the FHA they need only demonstrate that they suffered some form of "non-quantifiable" injury to be entitled to damages. *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 237 (6th Cir. 2003).

animus. Moreover, burning a cross on Plaintiffs' front lawn, with "KKK will make you pay" and the N-word written on it, is certainly interference (or perhaps more accurately a threat or intimidation) within the broad meaning of § 3617.[17] Finally, a reasonable jury could only conclude that Rhodes' conduct was casually connected to Plaintiffs' enjoyment of their right to rent their home. Although Defendants may not have specifically intended to drive Plaintiffs from their home, they certainly intended to disrupt and deprive Plaintiffs of enjoyment of their property. Once again, by setting a cross on fire on Plaintiffs front lawn, Rhodes purposely directed his actions at Plaintiffs' property.

**D.     Ohio Revised Code § 2307.70**

Finally, Rhodes moves for summary judgment as to Plaintiffs claims under Ohio Revised Code § 2307.70.[18] Rhodes specifically maintains that Plaintiffs have not presented sufficient evidence of injury to create a triable issue of fact.

Section 2307.70 states in relevant part:

(A) Any person *who suffers injury or loss to person or property* as a result of an act committed in violation of section 2909.05, 2927.11, or 2927.12 of the Revised Code has a civil action against the offender and *may recover in that action full compensatory damages, including, but not limited to, damages for emotional distress*, and may recover punitive or exemplary damages, court costs, other reasonable expenses incurred in maintaining that action, and the reasonable attorney's fees incurred in maintaining that action.

Ohio Rev. Code § 2307.70(A) (emphasis added). When bringing a claim under Ohio Revised

---

[17] For obvious reasons, the circumstances of this case are a far cry from a dispute between neighbors in which a racial slur is uttered. *See Halprin*, 388 F.3d at 330.

[18] As noted above, Plaintiffs Motion for Summary Judgment does not address their state law claims. Accordingly, in assessing Ohio Revised Code § 2307.70, the Court will only consider whether Rhodes is entitled to judgment as a matter of law.

Code § 2307.70 for emotional distress based on ethnic intimidation, a plaintiff "must still present sufficient evidence on the elements of emotional distress in order to recover for damages caused by the alleged ethnic intimidation." *Hayes v. Heintz*, No. 79335, 2002 WL 1041370, at *3 (Ohio Ct. App. 2002).

Here, Rhodes contends that Plaintiffs have failed to provide sufficient evidence of emotional distress. In Ohio, a plaintiff may recover for emotional distress even when such distress is not accompanied by physical injury. *Hayes*, 2002 WL 1041370, at *4. The emotional injury must be severe, such that "'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" *Ford Motor Credit Co. v. Ryan*, 189 Ohio App. 3d 560, 590 (Ohio Ct. App. 2010) (quoting *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (Ohio 1983)).

Under Ohio law, a plaintiff "must present some 'guarantee of genuineness' in support of his claim to prevent summary judgment in favor of the defendant." *Ford*, 189 Ohio App. 3d at 590 (internal quotations omitted). Nevertheless, "expert medical testimony concerning the plaintiff's mental distress is not always required." *Buckman-Peirson v. Brannon*, 159 Ohio App. 3d 12, 21 (Ohio Ct. App. 2004). For example, "[i]n lieu of expert testimony, a plaintiff may submit testimony of lay witnesses who testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff." *Ford*, 189 Ohio App. 3d at 590 (internal quotations omitted).

In this case, Rhodes is not entitled to judgment as a matter of law as to Plaintiffs' § 2307.70 claims. Plaintiffs have presented sufficient evidence regarding the anxiety and fear they have experienced as a result of the cross burning to raise an issue of fact as to emotional

21

distress damages. Although Plaintiffs do not present medical evidence, each Plaintiff testified

regarding his or her own experiences. Additionally, during their testimony, Plaintiffs

corroborated the distress that other family members have experienced. For example, a number of

other Plaintiffs support Shanay Gibson's assertion that she has experienced significant trouble

sleeping following the cross burning. (*See, e.g.*, J.W. Dep. 45–46.) Moreover, given the extreme

nature of Defendants' conduct, Plaintiffs' have presented sufficient evidence concerning Ohio's

objective severity requirement for emotional distress damages.

Contrary to Rhodes' assertion, *Hayes* does not require a different result. In *Hayes*, an

Ohio appellate court found that a plaintiff failed to produce sufficient medical evidence that the

defendants conduct aggravated her Lupus. 2002 WL 1041370, at *5. The court stressed that

"[e]xcept as to questions of cause and effect, which are so apparent as to be matters of common

knowledge, the issue of causal connection between an injury and a specific subsequent physical

disability involves a scientific inquiry and must be established by the opinion of medical

witnesses . . . ." *Id.* In this case, Plaintiffs attempt to link some physical injuries, for example

Ms. Gibson's headaches, to the cross burning. At the same time, however, in addition to physical

injury, Plaintiffs also provide that the cross burning led to fear and anxiety. Under the

circumstances of this case, medical evidence is not necessary for a reasonable jury to find that the

burning of a cross with racial threats written on it led Plaintiffs to suffer severe emotional distress

in the form of fear and anxiety.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs Motion for Partial Summary Judgment on the Issue

of Liability is **GRANTED**. (ECF No. 96.) Plaintiffs are specifically entitled to judgment against

22

Defendant Rhodes, as to the issue of liability, on their 42 U.S.C. § 1982, 42 U.S.C. § 1985, and

42 U.S.C. § 3617 claims.  Defendant Rhodes' Motion for Summary Judgment is **DENIED**.

(ECF No. 94.)

      **IT IS SO ORDERED.**


<u>  2-12-)013  </u>                                      
**DATE**                                  **EDMUND A. SARGUS, JR.**
                                          **UNITED STATES DISTRICT JUDGE**